UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 24-MJ-81 |
| | ) |
| RUBY CORADO | ) |
| | ) |

## DEFENDANT'S SECOND AMENDED MOTION AND MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE[1]

Defendant Ruby Corado, through the undersigned attorney, respectfully requests that this Court release her on bond pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno*, 481 U.S. 739 (1987). Ms. Corado has (1) significant connections to the community, (2) limited criminal history, and (3) no ability to flee. The government has failed to set forth sufficient facts to find that Ms. Corado is a serious risk of flight under 18 U.S.C. § 3142(f)(2)(A). Ms. Corado asks the Court to find that there are conditions that will reasonably ensure her appearance and ensure the safety of the community and to release her under those conditions.

**I.    Background**

Ms. Corado was arrested on March 5, 2024 pursuant to a criminal complaint charging her with bank fraud, wire fraud, laundering of monetary instruments, monetary transactions in criminally-derived proceeds, and failure to file report of foreign bank account. Ms. Corado first appeared before this Court on March 6, 2024 and a detention hearing was set for March 8, 2024. The government argues that detention is appropriate under 18 U.S.C. § 3142(f)(2)(A).

---

[1] Counsel submits this second amended motion to correct inadvertent typographical errors on pages 1, 5, and 6, due solely to counsel working under a tight deadline.

1

## II.     Legal Standard

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the *least restrictive* further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(b) and (c)(1)(B) (emphasis added).  The Supreme Court has explained:  "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose.").  "Nothing in this section shall be construed as modifying or limiting the presumption of innocence."  18 U.S.C. § 3142(j).  As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons."  *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.).  "It is only a 'limited group of offenders' who should be [detained] pending trial."  *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. N. 98-225 at 7 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3189).  Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant."  *Motamedi*, 767 F.2d at 1405.

It is the government's burden to demonstrate either by a preponderance of the evidence that the defendant is more likely than not to flee, or by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community.  *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.).  Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has presented sufficient evidence that Ms. Corado be detained: (1) the nature and circumstances of the offense

2

charged; (2) the weight of the evidence; (3) the history and characteristics of the person charged; and (4) the nature and seriousness of the danger posed by the person to any person in the community if she is released. 18 U.S.C. § 3142(g).

Finally, as relevant here, pursuant to the Bail Reform Act, if the government moves for detention alleging that there is a "serious risk" that the person will flee and the Court finds as such, a judicial officer may then determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community. *See* 18 U.S.C. § 3142(f)(2)(A). "A determination that an individual is a serious risk of flight must be supported by a preponderance of the evidence." *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019) (citing *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986) (per curiam)).

### III. The Government Has Not Met Its Burden of Proving That Ms. Corado Poses a "*Serious*" Risk Of Flight Under § 3142(f)(2)(A).

Ms. Corado should be released on conditions because there is not a "serious risk that [she] will flee" the jurisdiction under § 3142(f)(2)(A). Ordinary "risk of flight" is not a factor in § 3142(f). There is some risk of flight in every criminal case; "serious risk" of flight means something more.

According to a basic canon of statutory interpretation, the term "*serious* risk" means that the risk must be more significant or extreme than an ordinary risk. *See, e.g.*, *Corley v. United States*, 556 U.S. 303, 314 (2009); *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 698 (1995) (noting interpretation of statute should be reluctant to treat statutory terms as surplusage). Indeed, Congress has prescribed "serious risk of flight" and the risk of non-appearance as separate requirements. *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *8 (M.D. Tenn. May 27, 2021) (citing *Gibson*, 384 F. Supp. 3d at 965)

3

("Congress settled on very different language when describing the analysis courts must undertake once a detention hearing goes forward."). A risk of flight suggests an intentional and active effort to put oneself outside of the purview of the court, whereas non-appearance can cover negligent and other non-intentional circumstances. *Id.* Further, if a case does not involve a "serious risk" of flight then the government's request for detention fails at step one. *Id.* "The ordinary meaning of 'flee' [under (f)(2)(A)] suggests volitional conduct." *United States v. Ailon-Ailon*, 875 F,3d 1334, 1338 (10th Cir. 2017).

The BRA's legislative history also makes clear that detention based on serious risk of flight is only appropriate under "extreme and unusual circumstances."[2] For example, the case relied on in the legislative history as extreme and unusual enough to justify detention on the grounds of serious risk of flight involved a defendant who was a fugitive and serial impersonator who had failed to appear in the past, and had recently transferred over a million dollars to Bermuda. *See United States v. Abrahams*, 575 F.2d 3, 4 (1st Cir. 1978). The government must demonstrate that the risk of flight in a particular case rises to the level of extreme or unusual, and no such showing has been made here.

Moreover, the "[m]ere opportunity for flight is not sufficient grounds for pretrial detention." *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). The Bail Reform Act

---

[2] *See Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary*, 98th Cong. 48 (1983) ("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. . . . [T]hose [types] involving . . . a serious risk that the defendant will flee . . . *reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases*.") (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "*rare case of extreme and unusual circumstances . . .* justifies pretrial detention"—as representing the "current case law"); *see also Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in a noncapital case the defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th Cir. 1976) (holding that bail can only be denied "in the exceptional case").

authorizes detention "only upon proof of a likelihood of flight." *Id.* at 160. The "preponderance must, of course, go to the ultimate issue: that no combination or conditions -- either those set out in the Bail Reform Act itself or any others that the magistrate or judge might find useful -- can 'reasonably' assure that the defendant will appear for trial." *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

In this case, there is no reason to believe that Ms. Corado is a "serious" risk or that there are no conditions of release which would be sufficient to assure her appearance. Although Ms. Corado is a citizen of El Salvador, she lived in the United States for 35 years (a majority of her adult life), and she was prepared to resume her life in the United States when she returned in February. At the time of her arrest, Ms. Corado did not have a return ticket to go back to El Salvador. She was in the process of securing a new job in the United States. Additionally, Ms. Corado has significant family and friends in the D.C. area, including her sisters, her father, her sister-in-law,[3] and numerous friends. She is married to a US citizen, who grew up in the DC area and continues to have family here. In approximately 2007, Ms. Corado received legal permanent resident status in the United States and she has an interest in and every intention to maintain that status. There is no evidence that Ms. Corado's travel to El Salvador in 2022 was an attempt to flee legal action in the United States. She had been working on establishing an international branch of her organization for years and this travel was a necessary extension of that work. Additionally, Ms. Corado has attended hearings in a pending civil matter and maintains consistent communication with counsel in that matter.

---

[3] If released, Ms. Corado will live with her sister-in-law in Oxen Hill, Maryland. Ms. Corado can be placed on location monitoring, her passport surrendered, with a condition that she not obtain a new passport.

The D.C. Circuit has held that a defendant's ability to flee the country based merely on ties to a foreign country, without evidence that she is *likely* to flee, cannot serve as the basis for pretrial detention. *See Xulam*, 84 F.3d at 443. In *Xulam*, the court rejected the government's contention that the defendant -- an immigrant from Turkey who was charged with falsifying information on a passport and who had only been in the country for three years -- should be denied bail because nothing could stop him if he decided to flee. *Id.* at 444. The Court explained: "That, of course, is true of every defendant released on conditions; it is also not the standard authorized by law for determining whether pretrial detention is appropriate. Section 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it." *Id.*; *see also United States v. Himler*, 797 F.2d 156 (3d Cir. 1986) ("Mere opportunity for flight is not sufficient grounds for pretrial detention."); *Motamedi*, 767 F.2d at 1408 (revoking detention order for an Iranian citizen accused of illegal arms deals who allegedly had large bank accounts abroad and an ability to return to Iran with impunity). This was true in *Xulam*, even when the defendant was charged with passport fraud, suggesting at least a willingness to seek false documents that would allow him to leave the United States.

There is no evidence here of anything more than Ms. Corado's foreign citizenship and unsupported allegations that Ms. Corado has resources in El Salvador. This is not enough. The government has not demonstrated that Ms. Corado presents a *likelihood* of flight – and she, in fact, does not present a serious risk of flight.

The government has not demonstrated that Ms. Corado is a serious risk of flight or set forth any facts sufficient to find the risk of flight is extreme or unusual. In this case, the government contends that citizenship in El Salvador, recent presence in El Salvador, and alleged existence of funds meets the government's burden to show that Ms. Corado is a

"serious" flight risk under 18 U.S.C. § 3142(f)(2).  However, Ms. Corado has resided in the DMV area for over 35 years and has extensive family and friends in the area.

On the facts of this case, the government not only has not demonstrate a likelihood of flight, but also cannot demonstrate that Ms. Corado in fact has the ability to flee.  While Ms. Corado is a citizen of El Salvador, her passport was seized upon her arrest and with no passport, she has no ability to flee to El Salvador or anywhere else.  She is not eligible for a U.S. Passport and the Court can require that she not obtain another passport while on pretrial release.  *See Xulam*, 84 F.3d at 444 ("On a more practical level, the government has taken away all his passports and travel documents, so it is unlikely he could go far even if he wished to.").  Without a passport, she cannot travel.

Ms. Corado also has no assets with which to flee.  As this Court has found, she is eligible for court-appointed counsel, and Ms. Corado's husband confirms that she has no assets or property.  Simply stated, being born outside the United States and living for a short period internationally in the past is not sufficient to constitute a "serious risk of flight" for the purposes of § 3141(f)(2).

Furthermore, a defendant should not be detained as a "serious risk" of flight when the risk of non-appearance can be mitigated by conditions of release. The only defendants who qualify for detention under § 3142(f)(2) are those who are "[t]rue flight risks"—defendants the government can prove are likely to willfully flee the jurisdiction with the intention of thwarting the judicial process.  The government has not met its burden to seek detention of Ms. Corado as a "serious risk of flight" and, as stated below, there are conditions that can reasonably ensure her appearance at court.

### IV.     The Government Cannot Meet Its Burden to Demonstrate that Ms. Corado is a Flight Risk or Danger to the Community.

The D.C. Circuit recently reiterated the clear and convincing standard that the government must meet to justify detaining a defendant as a danger to the community:

> The crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that *an arrestee presents an identified and articulable threat to an individual or the community*, . . . a court may disable the arrestee from executing that threat. . . . Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community.

*United States v. Munchel*, 991 F.3d 1273, 1282-83 (D.C. Cir. 2021) (quoting *Salerno*, 481 U.S. at 751) (emphasis added); *see also United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) (explaining that the defendant must pose an actual danger to community, not that the defendant in theory posed a danger to the community). The government has not and cannot meet its burden here and Ms. Corado must be released under conditions. The Bail Reform Act factors demonstrate that there are conditions or combinations of conditions that can reasonably assure Ms. Corado's appearance at trial and protect the public.

   A.     *The Nature and Circumstances of the Offense*

The Complaint charges Ms. Corado with fraud offenses. No part of the offense involves violence or danger to others. The government focuses on the significant statutory maximum penalties, which is not unique to this case or cases in federal court in general. Ms. Corado, if convicted would face a sentencing Guidelines range of significantly less than the statutory maximum penalty, at counsel's initial calculation around 2 years or less. Additionally, judges in our district routinely sentence below the Guidelines in fraud cases. Therefore, the nature and circumstances of this offense do not support detention. The nature and circumstances of the offense also do not establish that Ms. Corado is a serious risk of flight. Ms. Corado has already

8

been attending proceedings in a civil matter and there are conditions that the Court can set to ensure her appearance.

Importantly, individuals in fraud cases are routinely released pretrial, even when facing the potential for significant penalties and in cases with much more significant loss amounts.  *See, e.g., United States v. Maresca*, No. 23-cr-123 (defendants released with much more significant potential penalties and loss amounts); *United States v. Barnes*, No. 22-cr-324 (released despite higher loss amount and ultimately reserved a 48 months sentence of incarceration); *United States v. Olaitan*, No. 21-cr-713 (released despite higher loss amount, alleged ability to create fraudulent identification, and ultimately received a 40 month sentence of incarceration); *United States v. Ogbenna*, No. 21-cr-672 (released despite higher loss amount and ultimately sentenced to 32 months incarceration).

B.     *The Weight of the Evidence*

The weight of the evidence does not provide clear and convincing evidence that Ms. Corado would be a danger to the community or a serious risk of flight if released.  As previously stated, the proffer in the government's memorandum does not include any allegations of dangerousness.  "Even overwhelming evidence of guilt would not, alone, meet [the clear and convincing test]."  *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018).

Most importantly, the weight of the evidence does not demonstrate that Ms. Corado is a serious risk of flight.  As described above, the actual Guidelines in this case are likely relatively low and would not lead to a finding that Ms. Corado is a serious risk of flight.

C.     *The History and Characteristics of Ms. Corado*

Ms. Corado is a transgender woman who has worked for a majority of her life to assist other trans individuals and individuals in the LGBT community.  As described above, Ms. Corado lived in the D.C. area for 35 years.  It is where she built her life.  It is where she met her

husband.  She has numerous family in the area and no reason to flee.  Ms. Corado traveled to El Salvador to develop an international branch of Casa Ruby.  However, when that project did not succeed, she looked for work in the United States and was in the process of confirming and staring a position when she was arrested.  When Ms. Corado returned to the United States in February 2024, she intended to remain and rebuild her life here.  Ms. Corado has no reason to flee.  In fact, she has every reason to remain in the United States to fight this case.

Additionally, Ms. Corado has no history of failing to comply with court supervision.  According to the pretrial report, she has one minor prior conviction from 2011 where she received and completed probation.  Ms. Corado has also been attending proceedings in a pending civil matter, demonstrating her willingness to appear in court.  It is important to note that the pretrial services report itself states that Ms. Corado is a low risk.

Finally, the Court should consider what pretrial detention would mean for Ms. Corado.  As a transgender woman, Ms. Corado is designated as a male by the D.C. Jail and held in a men's unit.  However, because the D.C. Jail has serious concerns that Ms. Corado would be a victim of sexual assault in the general population at the D.C. Jail, she is being held in protective custody.  Protective custody at the D.C. Jail is solitary confinement, with extremely limited times away from her cell, one hour a day if she is lucky.  Pretrial detention for Ms. Corado would be more punitive and cruel than for another individual because she is transgender.

The government again focuses on the allegations in this case as Ms. Corado's history and characteristics, but those are just allegations and are not sufficient evidence to conclude that Ms. Corado is a serious risk of flight.  The fact that Ms. Corado has no property or funds, as stressed by the government, is evidence that she has no means to flee.

Ms. Corado's history and characteristics do not provide any support for a finding that she

is a serious risk of flight. There are conditions that will reasonably assure her appearance and Ms. Corado must be released.

> D. *The Nature and Seriousness of the Danger to Any Person or the Community Posed by Ms. Corado's Release*

The government has not and cannot provide any evidence, let alone clear and convincing evidence, to support a finding that Ms. Corado would be a danger to the community if released. First, the dangerousness analysis "does not turn on any generalized, backward-looking assessment" of the offender or the crime. *Munchel*, 991 F.3d at 1286 (Katsas, J., concurring). "Instead, it turns on a specific, forward looking assessment of whether" the individual "currently pose[s] an unmitigable threat to public safety." *Id*. The government has not and cannot provide specific evidence to support a finding that Ms. Corado poses an unmitigable threat to public safety.

The government vaguely states that Ms. Corado might commit another offense, but her almost nonexistent criminal history and lack of access to a business or resources refutes that baseless allegation.

The government has not provided sufficient evidence for the Court to find that no combination of conditions could reasonably ensure the safety of the community and Ms. Corado's appearance at court and she must be released.

**V.  Statistics Showing that It Is Extremely Rare for Defendants on Bond to Flee or Recidivate Demonstrate that Ms. Corado Does Not Pose A Serious Risk of Flight or Danger to the Community.**

In this case, this Court should be guided by Administrative Office of the Courts statistics showing that nearly everyone released pending trial appears in court and does not reoffend. In fact, in 2019, 99% of released federal defendants nationwide appeared for court as required and

11

98% did not commit new crimes on bond.[4]  Significantly, this near-perfect compliance rate is equally evident in federal districts with very high release rates and those with very low release rates.[5]  Even in districts that release two-thirds of all federal defendants on bond, fewer than 1% fail to appear in court and just over 2% are rearrested while released.[6]  The below chart reflects this data:



---

[4] AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

[5] The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019.  *See* AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42.  The failure-to-appear and rearrest rates for these districts were calculated using Exhibit 1, AO Table H-15.  The districts with the lowest release rates in 2019 were, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee, S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina, C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands.  *See* AO Table H-14A.

[6] *See* AO Table H-15; AO Table H-14A.

**VI.   Ms. Corado Must Be Released Because There Are Conditions That Will Reasonably Assure Appearance and Safety.**

Ms. Corado must be released because there are conditions that will reasonably assure the safety of the community and her appearance in court. A defendant cannot be detained "unless a finding is made that no release conditions 'will reasonably assure . . . the safety of the community'" and the defendant's appearance in court. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (quoting 18 U.S.C. § 3142(e)). Here, the government has not carried its high burden of proving by clear and convincing evidence that there are no release conditions that will reasonably assure the safety of the community. *See id*. at 708 n.8. The government also has not proved by a preponderance of the evidence that there are no conditions that would reasonably assure Ms. Corado's appearance in court. Thus, Ms. Corado cannot be detained.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Ms. Corado's appearance in court and the safety of the community.

- Turn over any passports and agree not to procure another passport;
- Seek Court or Pretrial prior authorization for any travel more than 50 miles outside Washington, D.C.;
- Curfew or home detention;
- Report on a "regular basis" to PTS or some other agency, *id*. § 3142(c)(1)(B)(vi);
- Refrain from possessing "a firearm, destructive device, or other dangerous weapon," *id*. § 3142(c)(1)(B)(viii);
- Refrain from "excessive use of alcohol," *id*. § 3142(c)(1)(B)(ix); and
- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription," *id*. § 3142(c)(1)(B)(ix).

Because there are conditions of release that will reasonably assure Ms. Corado's appearance in court and the safety of the community, she must be released.

13

**VII.**   **Conclusion**

For the foregoing reasons, Ms. Corado respectfully requests that this Court release her with conditions.

                  Respectfully submitted,

                  A.J. KRAMER
                  FEDERAL PUBLIC DEFENDER

                  _____/s/_____
                  Diane Shrewsbury
                  Assistant Federal Public Defender
                  625 Indiana Ave., N.W., Suite 550
                  Washington, D.C.  20004
                  (202) 208-7500